UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 6:19-cv-00187-GFVT-EBA

MIKLE ANTHONY BUTLER                                                          PLAINTIFF,

v.          **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

OFFICER TRETT, *et al*.,                                                     DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter is before the Court on competing motions for summary judgment by Plaintiff Mikle Butler and collective Defendants. [R. 71 and 76]. Defendants' motion for summary judgment is in response to Plaintiff's complaint, bringing claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). [R. 1]. Butler is a federal inmate incarcerated at Administrative United States Penitentiary in Thomson, Illinois ("AUSP Thompson"), but was previously housed at United States Penitentiary in Pine Knot, Kentucky ("USP McCreary") from July 2018 through September 2019. [*Id*.]. Butler filed the instant action on July 29, 2019, seeking his freedom or compensation of $50,000 to $100,000 as a result of an incident that occurred on March 19, 2019 at USP McCreary. [*Id*.].

The district judge previously dismissed some of Butler's claims, including those against Warden Kizziah—citing that Butler failed to link any allegations against the Warden to material facts. [*See* R. 36 at p. 3]. However, the Court denied without prejudice Defendants' first motion for summary judgment as premature. [*See* R. 34]. Butler's remaining claims are an Eighth

Amendment excessive use of force claim against two USP McCreary officers and an Eighth Amendment deliberate indifference claim against a psychologist also employed at USP McCreary. [R. 1]. Following a period of discovery, Defendants re-raise their motion for summary judgment. [R. 71].

Butler subsequently filed a competing motion for summary judgment [R. 76], and the Defendants, in turn, responded. [R. 77]. The matter is now ripe for decision. For the reasons outlined herein, the Court recommends that Defendants' motion [R. 71] be granted as to the claim against Dr. Parsons-Gould. The Court further recommends that both Plaintiff's and Defendants' motions [R. 71 & 76] be denied as to the claims against Officers Trett and Sizemore.

II. Factual and Procedural History

*Pro se* Plaintiff Mikle Butler is a federal inmate serving a ninety-two-month sentence and previously housed at USP McCreary. On March 19, 2019, USP McCreary staff were completing their rounds in the prison's Special Housing Unit ("SHU") when Butler approached one of the Associate Wardens and handed him a note. The note said that Butler was having suicidal thoughts. At that time, staff removed Butler from his SHU cell and placed him in a recreational cell, so that they could keep an eye on him. At around 11:20 a.m., Defendants Trett and Sizemore, both SHU officers, attempted to escort Butler from the recreation cell to his own cell. As the officers escorted Butler, an incident occurred that resulted in Butler and the two officers falling to the ground. While on the ground, Defendant Sizemore secured Butler's upper body and Defendant Trett secured his lower body.

More officers approached the scene and the two Defendant officers handed over control

of Butler. The subsequent responding officers picked Butler up to his feet and escorted him to a holding cell where he was placed in restraints. Staff conducted a medical assessment of Butler at that time and noted no injuries. About an hour later, Butler was seen by Defendant Parsons-Gould, the Chief Psychologist at USP McCreary. Dr. Parsons-Gould reviewed Butler's psychology records and conducted an in-person evaluation where she found that Butler was alert and fully oriented. Dr. Parsons-Gould found Butler to be cooperative and that he showed no signs of anxiety, depression, mania, or psychosis. Butler told Dr. Parsons-Gould that he had expressed suicidal ideations in the note to the associate warden, but he did not have them anymore. Dr. Parsons-Gould further noted that, though Butler had been previously diagnosed with some emotional disorders, he did not have a history of suicidal ideations. He did, however, have three previous documented suicidal statements, though those were likely used by Butler to control or manipulate his confinement in prison. Staff kept Butler restrained until March 21, 2019, as he continued to be disruptive. As staff conducted checks on his restraints, Butler cursed at, spat at, and threatened to assault them.

On July 29, 2019, Butler filed this instant action. [R. 1]. Butler's surviving claims allege that Officers Trett and Sizemore used excessive force when they took him to the ground while escorting him back to his cell. [*Id.* at p. 3]. Butler asserts that the incident resulted in two "busted knees", damage to the corner of his big toe, a bruised and injured left shoulder blade, as well as back and neck pain. [*Id.* at pp. 3-4]. Butler also claims that Dr. Parsons-Gould was deliberately indifferent for failing to put him on suicide watch after he expressed suicidal ideation. [*Id.* at p. 5].

### III.  Standard of Review

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24. To avoid summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The following factors bear consideration by a court when entertaining a motion for summary judgment:

   1. Complex cases are not necessarily inappropriate for summary judgment.

   2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

   3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

   4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

   5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient

> disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003)

(citing *Anderson*, 477 U.S. at 251). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

IV. Analysis

In their motion, the Defendants seek summary judgment, claiming first that Butler failed to demonstrate an Eighth Amendment excessive force claim against Defendants Sizemore and Trett. [R. 71 at p. 2]. Further, Defendants claim that Butler failed to demonstrate an Eighth Amendment deliberate indifference claim against Dr. Parsons-Gould for her decision to not place him on suicide watch. [*Id*. at p. 10]. Finally, Defendants claim that they are all entitled to qualified immunity. [*Id*. at p. 15]. Because the Defendants have raised the shield of qualified immunity, the Court must address whether a constitutional violation has occurred, and if so, whether that violation was an affront to clearly established law.

In his motion, Butler seeks summary judgment, arguing that no reasonable juror, viewing video evidence, could find that the officers' use of force was justified under the circumstances. [R. 76 at p. 1]. Further, Butler reiterates his claim against Dr. Parson-Gould that she denied him medical treatment when she did not conduct a psychological evaluation on him before the incident took place and when she failed to place him on suicide watch after. [*Id*. at p. 10].

I. **Butler's Eighth Amendment Excessive Force Claim**

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563 (6th Cir. 2013). The standard used to analyze excessive force claims under the Eighth Amendment requires the Court to determine whether the officers acted in a good faith effort to maintain or restore discipline, or whether they acted maliciously and sadistically to cause harm. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992).

To make a claim under the Eighth Amendment, a prisoner must satisfy an objective and a subjective component. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Not every angry touch by a prison guard gives rise to a federal cause of action, however. Prison officials may often be required to use physical contact to ensure prison security. *Hudson*, 631 F.3d at 9. During that contact, "The objective component requires the pain inflicted to be 'sufficiently serious." *Williams*, 631 F.3d at 383.

The Plaintiff must also satisfy a subjective component. Generally, if the force applied is grossly disproportionate to the offense committed by the prisoner, a plaintiff states a cause of action for use of excessive force. *Rhodes v. Chapman*, 452 U.S. 337, 345 (2012). That use of force rises to the level of an Eighth Amendment violation only if the contact represents an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When determining if the use of force was wanton and unnecessary, courts may consider the extent of injury suffered by an inmate, along with other factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

"Officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation,' the reasonableness of an officer's use of force 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Laury v. Rodriguez*, 659 F. App'x 837, 843 (6th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Here, Butler claims that officers Trett and Sizemore used excessive force when they were walking him back from the outside recreation cell to his own cell. [R. 1 at pp. 2-4]. Butler claims that as he was being escorted into the housing unit, Officer Sizemore falsely accused him of resisting and together the two officers slammed him to his knees and pushed him down onto the ground. [*Id*. at p. 3]. Butler goes on to say that Sizemore laid across his body while choking him. [*Id*.]. In his motion for summary judgment, Butler claims that he complied with every order the officers gave him leading up to the incident. [R. 76 at p. 1]. He asserts that his hands were restrained, and he showed no signs of resistance or imminent violence. [*Id.* at p. 2]. Butler argues that the incident in question did not warrant the amount of force the officers used, and that the officers did not use force as a last alternative after all other reasonable efforts to resolve the situation failed. [*Id*.]. In sum, Butler argues that Trett and Sizemore's use of force was not to ensure safety and security or prevent property damage, but to "maliciously and sadistically" cause him harm.

Defendants' description of the events are, in essence, the exact opposite of Butler's version. Defendants allege that they were escorting Butler from the outside recreation cell back into the housing unit using a "soft hands" approach, which consists of one officer on each side of

the prisoner grasping the prisoner on the upper arm near the armpit. [R. 71 at p. 5]. According to the Defendants, this approach allows for immediate response to any disruptive or uncooperative behavior, and it is both a common and acceptable approach under the circumstances. [*Id*. at pp. 5-6]. Defendants assert that as they were leaving the recreation area, Butler attempted to pull away from Defendants. [*Id*. at p. 6]. The officers state that the combination of Butler pulling away combined with their attempts to hold him caused Butler to fall to the floor, which brought the officers down on top of him. [*Id*.]. They go on to say that Butler's act of pulling away necessitated the use of force to regain physical control of him. [*Id*.].

Defendants rely on the testimony of an expert witness in correctional use of force, Donald L. Leach II. [*See* R. 71-5]. The expert asserts that, had officers not regained control of Butler at that point, they would have had to chase him around the housing unit, resulting in "the involvement of additional staff, and escalation in the type of force used (OC pepper spray, Taser, bean bag, etc.) and an increased potential for injury to one of the parties involved." [*Id*. at pp. 16-17]. The expert further asserts that the use of force in this situation was "less about employing a use of force technique and appears to be more about the three men falling uncontrollably to the ground." [*Id*. at p. 17]. Defendants argue, and the expert agrees, that the actions taken were more akin to a split-second response and were not premeditated. [*Id*.]. Defendants further argue that Butler suffered no injury from the incident. [R. 71 at p. 7].

Both Butler and the Defendants extensively refer to several videos taken of the incident [R. 71, Atts. F & G], and both parties assert that the videos confirm their version of events. Typically, in determining summary judgment, a Court must view the facts in a light most favorable to the nonmoving party if there is a genuine dispute of those facts. Fed. R. Civ. P.

56(c). However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 379 (2007). When determining summary judgment in a case with video evidence, a court may "view the facts in the light depicted by the videotape." *Id*. at 380-81. Here, the Court included the video evidence as part of its consideration of both parties' motions.

The videos consist of three clips from the prison's video surveillance system—one of the officers removing Butler from the holding cell, and two from different angles of the incident in question. [*Id*., Att. F]. The other video is taken from a handheld camera, which shows Butler being picked up by staff after the incident and taken to a cell where he was given a medical evaluation and eventually placed in ambulatory restraints. [*Id*., Att. G]. Butler asserts that the video evidence shows that he was compliant and cooperative, and that the Defendants used excessive force to respond. [R. 76 at pp. 1-2]. Defendants argue that the video represents Butler's attempt to pull away and that their decision to use force was a necessary, albeit split-second, one. [R. 71 at p. 8].

The Court has reviewed the video evidence, along with the entirety of the record, in consideration of both parties' motions. Simply put, it is unclear from the video which party instigated the use of force. It *is* clear from the video that Butler and the Defendants entered through the housing unit door together. It is further evident that Butler falls to his knees and the Defendants fall on top of him. What remains unclear, however, is whether or not, as Butler asserts, the Defendants pushed him down, *or* as the Defendants assert, Butler pulls away and the Defendants fall on top of him. Further, the surveillance video of the actual incident does not have

sound, which might have provided some context. A party is entitled to summary judgment if the movant can show that there is no genuine dispute as to any material fact. Fed R. Civ P. 56(a). Here, there is a genuine dispute as to which party initiated the incident, and that fact is certainly material.

If, as Butler asserts, he was compliantly walking into the housing unit and the officers pushed him down, then the Defendant Officers acted in bad faith and not in a manner that was intended to maintain or restore discipline. See *Hudson*, 503 U.S. at 8. That type of unprovoked action can only be said to be malicious, sadistic, and perpetrated to cause harm. *Id.* Defendants hinge their argument on their assertion that Butler pulled away from them and that they fell with him, thereby necessitating the force. Contrary to their assertion, however, it is not apparent from the video that Butler, in fact, pulled away. Put simply, if Butler's version of the facts is to be believed, then the officer's use of force was grossly disproportionate and unnecessary under the circumstances, thus rising to the level of an eighth amendment violation. See *Rhodes*, 452 U.S. at 345

On the other hand, if Defendants were in fact acting in response to an inmate attempting to pull away from their "soft touch" control, then their use of force was neither wanton nor unnecessary. See *Estelle*, 429 U.S. at 103. Under those circumstances a reasonable officer in the shoes of the Defendants would have likely considered the risk to staff, other inmates, and property and made the split-second decision to apply force in order to abate those risks. An inmate attempting to run away from staff would be the exact type of situation in which a good faith application of force is necessary to maintain or restore discipline. See *Hudson*, 503 U.S. at 8. However, as noted above, it is simply unclear from the video evidence which party instigated

the incident. Without knowing for certain which party acted first, it is impossible to know whether the defendants' use of force was excessive and rising to the level of a Constitutional violation. Thus, a genuine dispute for trial exists such that a reasonable jury could return a verdict for either party, and summary judgment is inappropriate. See *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir. 2012).

For the reasons detailed above, the Court recommends that both Plaintiff's and Defendants' motions for summary judgment be denied with respect to Butler's claims against Defendants Trett and Sizemore.

## II. Butler's Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward his serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F.3d 935, 941 (6th Cir. 2010). The objective component requires the Plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). "Proof of a prisoner's psychological needs manifesting themselves in suicidal tendencies with 'a strong likelihood that he would attempt to take his own life' are sufficiently serious for purposes of the objective component." *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 333 (6th Cir. 2013)

(quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). Where a plaintiff prisoner has a diagnosed medical need, the objective component can be established by showing that the prison failed to provide treatment or provided treatment so cursory it essentially amounted to no treatment. Rhinehart v. Scott, 894 F.3d 721, 737 (6th Cir. 2018).

The subjective component requires the Plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007). To satisfy this, a prisoner plaintiff must show more than "errors in medical judgment or other negligent behavior". *Estelle*, 429 U.S. at 107-08. The prisoner has to show that the Defendant, "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Farmer* 511 U.S. at 837. Simply put, "deliberate indifference describes a state of mind more blameworthy than negligence." *Id*. at 835. In the context of Butler's claim, the subjective component would require "proof that a prison official drew an inference from the available facts that there was a 'strong likelihood' of prisoner suicide, but then disregarded that risk by failing to take adequate precautions to mitigate the risk." *Galloway*, 518 F. App'x 330 at 333. Notably, when a prisoner receives some medical attention and, as here, the dispute is over that treatment's adequacy, "federal courts are generally reluctant to second guess medical judgments." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, Butler fails to establish Dr. Parsons-Gould acted with deliberate indifference. Butler hinges his claims on two separate facts. First, he asserts deliberate indifference because Dr. Parsons-Gould did not evaluate him before the incident with the guards occurred. [R. 76 at p.

Page **13** of **18**

10]. Second, he asserts deliberate indifference because Dr. Parsons-Gould did not place him on suicide watch after the incident. [*Id*. at p. 11]. Neither of these claims rise to the level of deliberate indifference.

Butler was evaluated by Dr. Parsons-Gould soon after the incident with the guards occurred. [R. 71-1 at p. 10]. At that time Dr. Parsons-Gould conducted a suicide risk assessment, which entailed reviewing Butler's psychological records and performing an in-person evaluation. [*Id*.]. In a lengthy report, Dr. Parsons-Gould detailed Butler's psychological history, including prior diagnoses and his history of substance abuse. [*Id*. at pp. 10-11]. Notably, Dr. Parsons-Gould discussed Butler's lack of history with self-harm, even noting that one prior incident was determined "an apparent effort to control conditions of confinement." [*Id*. at p. 11]. She also detailed Butler's symptoms at the time of the instant evaluation, including a thorough recounting of his presented symptoms. [*Id*.]. Dr. Parsons-Gould wrote that Butler's mood, affect, and symptoms were all normal. [*Id*.]. Significantly, the report states, "Butler stated that he gave the [associate warden] a note reporting that he was having suicidal ideations but denied experiencing them at this time." [*Id*.]. Dr. Parsons-Gould reported that Butler's overall acute suicide risk was low and that his chronic suicide risk was absent, thus she did not recommend a suicide watch. [*Id*. at p. 12].

It is clear from Dr. Parsons-Gould's assessment that Butler's claim of deliberate indifference is insufficient. In fact, he fails to meet even the objective component. Butler has not provided any medical proof that he had a sufficiently serious condition that warranted him being placed on suicide watch. Further, Butler does not, nor could he, contend that he was not provided medical treatment at all, nor was it "so cursory it amounted to no treatment." See *Rhinehart*, 894

F.3d at 737. The record reflects that Dr. Parsons-Gould promptly and thoroughly evaluated Butler and subsequently reported her findings.

As to the subjective component, Butler fails to provide any evidence that any prison official drew an inference from the facts that there was a "strong likelihood" of prisoner suicide and disregarded that risk. See *Galloway*, 518 F. App'x at 333. In fact, the available evidence points to the contrary. Dr. Parsons-Gould evaluated Butler, including asking him if he currently experienced suicidal ideations, which he denied. Given the information she had, Dr. Parsons-Gould was correct in determining that there was not a "strong likelihood" of prisoner suicide. While Butler may disagree with that assessment now, a prisoner's "disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation." *Rhinehart*, 894 F.3d at 740. Further, the Sixth Circuit has previously held that "federal courts are generally reluctant to second guess medical judgments" when a prisoner receives some form of treatment. *Alspaugh*, 643 F.3d at 169. Here, Butler obviously received treatment. Though he was not placed on suicide watch, as he argues he should have been, Butler suffered no harm from Dr. Parsons-Gould's decision. For the foregoing reasons, the Defendants' motion for summary judgment regarding the claims against Dr. Parsons-Gould should be granted.

### III. Qualified Immunity

Because all three remaining Defendants raised claims of qualified immunity, the Court will also consider that matter.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct.

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). Qualified immunity must be assessed in the context of each individual's specific conduct. *Id*. at 624. "The burden rests on the Plaintiff to show Defendants are not entitled to immunity." *Id*. at 623. For a right to be clearly established, "the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765 (2014).

As to the Defendant Officers Trett and Sizemore, they do not enjoy qualified immunity under these circumstances, and viewing the facts in the light most favorable to Butler. If, as Butler alleges, Officers Trett and Sizemore pushed Butler down and applied unprovoked force, then they violated his Eighth Amendment right against cruel and unusual punishment by use of excessive force, a right that is clearly established. Under the standard above, any reasonable official would know that pushing down a handcuffed prisoner without provocations is an unreasonable use of force, thus Butler's rights were clearly established. See *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014). Therefore, Defendants Trett and Sizemore should not be shielded from being sued, *Reilly*, 680 F.3d at 623, and as detailed above, their motion for summary judgment should be denied.

Defendant Dr. Parsons-Gould, however, does enjoy qualified immunity under these circumstances, even viewing the facts in the light most favorable to Butler. As detailed above, Dr. Parsons-Gould did not act with deliberate indifference to Butler's medical needs pursuant to *Bivens*. Qualified immunity, which shields Defendants from being sued, *Reilly*, 680 F.3d at 623, provides an alternative basis for granting summary judgment in favor of Dr. Parsons-Gould. For that reason she should be awarded summary judgment on the claim against her.

### IV. Butler's Motion for an Injunction

Also pending before this Court is Butler's motion requesting the Court to forward his letter to "the Office of Inspector General and to the U.S. Department of Justice internal affairs division." [R. 62]. In the alternative, Butler requests the Court to grant injunctive relief from officers or to be removed from prison. [*Id.*]. Butler's letter describes in detail the harassment Butler has allegedly endured at United States Prison Thomson where he is currently incarcerated. The alleged harassment includes multiple cell searches which resulted in his mp3 player being destroyed as well as the loss of some of the discovery he obtained from defendants in the instant lawsuit. Butler claims that the harassment is in retaliation against him for filing this lawsuit. The problem with Butler's request is that he provides no legal or factual basis on which this Court may grant his motion. Thus, it is recommended that Butler's motion [R. 62] be denied.

### Conclusion

For the above reasons, it is RECOMMENDED that:

1. Defendants' motion for summary judgment [R. 71] be GRANTED regarding Plaintiff's Eighth Amendment claims against Defendant Dr. Parsons-Gould and DENIED regarding Plaintiff's Eighth Amendment claims against Defendants Officers Trett and Sizemore.

2. Plaintiff's motion for summary judgment [R. 76] be DENIED.

3. Plaintiff's motion for an injunction [R. 62] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F.

Supp. 2d 737, 749–50 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed July 15, 2021.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge